PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
\_\_\_\_LODGED
\_\_\_\_RECEIVED

**October 31, 2007**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>TRAVIS P. ANDERSON and BONNIE M. ANDERSON,<br><br>                    Debtors. | Case No. 01-49572 |
| TRAVIS P. ANDERSON and BONNIE M. ANDERSON,<br><br>                    Plaintiffs,<br><br>   v.<br><br>STAR RENTALS, INC., dba STAR RENTALS & SALES, a Washington Corporation,<br><br>                  Defendant. | Adversary No. 07-4012<br><br>**MEMORANDUM DECISION** |

Trial was held in this matter on October 3, 2007, on the Complaint for Discharge Violation, Lien Determination and Damages filed by Travis P. Anderson and Bonnie M. Anderson (Debtors) against Star Rentals, Inc., dba Star Rentals & Sales (Star Rentals). Based on the evidence, pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

MEMORANDUM DECISION - 1

**FINDINGS OF FACT**

The facts are not in dispute. On April 10, 2001, Star Rentals obtained a judgment in Clark County Superior Court against the Debtors in the principal amount of $21,562.27. On April 17, 2001, Star Rentals recorded its judgment with the Clark County Auditor. At that time, the Debtors owned a residence in Clark County located at 31217 Northeast George Road, Camas, Washington (Property).

On October 3, 2001, the Debtors filed a petition for relief under Chapter 7 of Title 11. The Debtors, on Schedules A and D, listed the fair market value of the Property as $260,000, and indicated that the Property was subject to a mortgage balance in the amount of $238,072.65. A discharge was entered in the bankruptcy on January 8, 2002, and the case closed on April 9, 2003.

In November, 2005, the Debtors sold the Property to a third party for $515,000. During the closing, Star Rentals asserted that its judgment lien (Judgment Lien) on the Property was valid. In order to secure release of the Judgment Lien and to close the sale, the Debtors authorized payment of $26,805.54 to Star Rentals through escrow.

The Debtors have never moved, either during or after their bankruptcy, to have the Judgment Lien avoided pursuant to 11 U.S.C. § 522(f).

On January 31, 2007, the Debtors filed the current adversary complaint against Star Rentals, seeking damages in the amount of $26,805.54, for Star Rentals' post-discharge assertion of the Judgment Lien against the proceeds from the sale of Debtors' Property.

**CONCLUSIONS OF LAW AND DISCUSSION**

"A bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property." Cen-Pen Corp.

MEMORANDUM DECISION - 2

v. Hanson, 58 F.3d 89, 92 (4th Cir. 1995). Thus, "[i]t is well established that a discharge in bankruptcy does not extinguish a lien on property which had attached as of the date of the petition." Barnes v. Sawyer (In re Barnes), 326 B.R. 832, 841 (Bankr. M.D. Ala. 2005) (citations omitted). However, "a creditor [may not] proceed *in rem* against a property interest of the debtor if the creditor had no lien before the bankruptcy case and the debtor's personal liability has been discharged." 4 L. King, Collier on Bankruptcy ¶ 524.02[1], p. 524-14.9 (15th ed. rev. 2007) (footnote omitted).

The Debtors' primary contention is that when they commenced their bankruptcy case, because there was no non-exempt equity to which the Judgment Lien could attach, Star Rentals did not have a valid judgment lien, pursuant to RCW 6.13.090. RCW 6.13.090 provides that "[a] judgment against the owner of a homestead shall become a lien <u>on the value of the homestead property in excess of the homestead exemption</u> from the time the judgment creditor records the judgment . . . ." (Emphasis added.) The Debtors rely on this statute and on a line of Washington State cases interpreting this statute.

There does not appear to be state case law directly on point, answering the question of whether, pursuant to RCW 6.13.090, a judgment lien attaches upon recordation, or whether it does not attach until there is value in the homestead property in excess of the homestead exemption. The plain language of the statute also provides no definitive resolution, as the controlling language is open to interpretation: "shall become a lien on the value of the homestead property in excess of the homestead exemption from the time the judgment creditor records the judgment . . . ." RCW 6.13.090. For instance, this language could be read to create a lien only when excess value exists, or from the time the judgment creditor records the judgment, whether or not excess value exists.

MEMORANDUM DECISION - 3

For guidance, the Court looked to case law interpreting a similar homestead judgment lien statute in California. The statute, in relevant part, states:

> (c) A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following:
> (1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien.
> (2) The homestead exemption set forth in Section 704.730.

CAL. CIV. PROC. § 704.950.

Considering the application of this statute, a California bankruptcy court held that the "the lien created by the recordation of an abstract of judgment will not attach to a declared homestead unless the value of the homesteaded property exceeds the total of all liens and encumbrances and the amount of the homestead exemption because of § 704.950." In re Dodge, 138 B.R. 602, 606 (Bankr. E.D. Cal. 1992).

Two different California appellate districts that subsequently interpreted the statute, however, did so differently, one consistent with Dodge and the other adopting an alternate approach. In Teaman v. Wilkinson, 59 Cal. App. 4th 1259, 1263-67 (1997), Division One of the Second Appellate District suggested that until surplus equity develops, the judgment lien does not attach to the homestead. Conversely, in Smith v. James A. Merrill, Inc., 64 Cal. App. 4th 94, 100 (1998), Division One of the Fourth Appellate District held that the applicable statute does not govern *when* a judgment lien attaches to a declared homestead, but rather only the amount of the lien. "Thus, although the judgment lien attaches to the homestead when the abstract of judgment is recorded, the amount of the lien will vary over time pursuant to the formula in section 704.950." Smith, 64 Cal. App. 4th at 101 (citation omitted). Both cases, however, held that surplus equity may be calculated at a date later than when the

MEMORANDUM DECISION - 4

abstract of judgment is recorded, "such as at the time the judgment debtor filed a bankruptcy petition." In re Watts, 298 F.3d 1077, 1082 (9th Cir. 2002).

Notably, the Smith and Teaman cases were decided in direct response to the Ninth Circuit Court of Appeals' (Ninth Circuit) holding in Jones v. Heskett (In re Jones), 106 F.3d 923 (9th Cir. 1997), overruled by Watts, 298 F.3d at 1083. In that case, in interpreting CAL. CIV. PROC. § 704.950, the Ninth Circuit held that a judgment creditor's lien attaches only if surplus equity exists at the time the creditor records the abstract of judgment, or if the creditor executes on the judgment, creating a lien that has a two-year life. Jones, 106 F.3d at 927. Recognizing the state courts' rejection of this interpretation, the Ninth Circuit subsequently applied the Smith and Teaman holdings in Watts, as follows:

> Had the bankruptcy court here followed the rationale of *Smith* and *Teaman* instead of *Jones*, it would have concluded that Wolfson's lien had attached by the time Debtors filed their Chapter 7 bankruptcy petition, and thus the lien could not have been avoided on this basis. We adopt that approach here.

Watts, 298 F.3d at 1082.

This Court also reviewed case law interpreting another similar homestead statute, ALA. CODE § 6-10-2, that provides that the homestead in Alabama is not subject to levy and sale for the collection of debts to the extent exempt. In Barnes, the bankruptcy court for the Middle District of Alabama considered application of ALA. CODE § 6-10-2 to determine whether a creditor's judgment lien survived the discharge in bankruptcy. Focusing on in rem liability, the bankruptcy court found that because there was net equity in the property as of the date of the bankruptcy petition, the judgment lien had attached and remained attached post-discharge. Barnes, 326 B.R. at 841. Interestingly, however, the bankruptcy court commented in dicta that the outcome would have been different had there been no excess equity.

MEMORANDUM DECISION - 5

> The Court notes that had Sawyer's lien not attached to Barnes' residence, as of the petition date, then the result here would be different. In other words, the result here turns on the value of the property and the amount of the senior liens. If the property had a value less than the total of the senior liens (plus Barnes' homestead exemption), then Sawyer's judgment lien would not have attached to Barnes' property.

Barnes, 326 at 842.

Also offering guidance is a treatise's examination of floating liens in the bankruptcy context. This analysis appears to arise when a creditor claims a pre-petition lien on property acquired post-petition.

> The discharge enjoins any "action, the employment of process, or an act, to collect, recover or offset" a discharged debt "as a personal liability of the debtor [. . . .]" 11 U.S.C.A. § 524(a)(2). The same reasoning argues for interpreting the language "act, to collect, recover" to cover and enjoin a prepetition lien that would float to the debtor's postpetition property.
> It is possible that the spread of a prepetition judgment lien is also stopped by the language of (a)(1) that "voids any judgment." Id. § 524(a)(1). The judgment is a debt which the lien of judgment secures. Without the debt there is nothing to secure and no basis for the lien. The lien is most probably preserved to the extent of property to which it has already attached. To any further extent, however, the judgment lien is seemingly undermined, quite literally, by voiding the judgment debt.

1 David G. Epstein et al., Bankruptcy § 3-11, at 155-56 n.27 (1992). Under this analysis, if a lien does not attach to the real property prior to bankruptcy, and the discharge releases the debtor from personal liability on the debt, there is no basis for the lien because there is nothing to secure the debt. See Ogburn v. Southtrust Bank (In re Ogburn), 212 B.R. 984, 987 (Bankr. M.D. Ala. 1995)

The Court now turns to the Washington State line of cases interpreting RCW 6.13.090, upon which the Debtors relied. The Court has previously visited these cases and grappled with a similar issue in Ellis v. Ford Motor Credit Co. (In re DeLavern), 337 B.R. 239 (Bankr. W.D. Wash. 2005). In that case, in the context of a trustee's preferential transfer action, the

MEMORANDUM DECISION - 6

Court considered whether, pursuant to RCW 6.13.090, at the time of a pre-petition refinance, a judgment lien attached to an interest in the property of the debtors, or whether, because of the debtors' homestead, the lien was unable to attach to the property, rendering the creditor unsecured. There, the judgment creditor agreed to release its judgment lien in exchange for a partial payment of the judgment at the time of a pre-petition refinance. The Court focused on the Washington Supreme Court case <u>Mahalko v. Arctic Trading Co.</u>, 99 Wn.2d 30, 659 P.2d 502 (1983), <u>overruled on other grounds by</u> <u>Felton v. Citizens Fed. Sav. & Loan Ass'n</u>, 101 Wn.2d 416, 424, 679 P.2d 928, 932 (1984), and its remaining effectiveness after the enactment of RCW 6.13.090, as observed by Division One:

> The *Mahalko* court said that "[g]enerally speaking, personal judgments become liens upon the real property of the judgment debtor. RCW 4.56.190-.200. *Such judgments do not become liens upon real property to which the homestead exemption applies.*" *Mahalko*, 99 Wash. 2d at 34, 659 P.3d 502 (emphasis added). This portion of the *Mahalko* opinion is still good law and was not undermined, but rather was confirmed by the subsequent enactment of RCW 6.13.090.

<u>DeLavern</u>, 337 B.R. at 241-42 (quoting <u>In re Deal</u>, 85 Wn. App. 580, 585, 933 P.2d 1084, 1087 (1997)).

Thereafter, this Court concluded in <u>DeLavern</u>:

> Thus, while a judgment lien is created on property rather than value pursuant to *Wilson Sporting Goods*, under the more specific analysis of *Deal* and *Sweet*, it cannot attach to homestead property. In this case, there was no value above the Debtors' homestead exemption. Because Ford's judgment lien could not attach to the Debtors' homestead property, there was no property to which a lien could attach, rendering Ford unsecured at the time of the refinance.

<u>DaLavern</u>, 337 B.R. at 242.

In the instant case, the time to evaluate the value of the Property, and thereby the validity of the Judgment Lien, is the date on when the Debtors filed their bankruptcy petition. <u>See</u> <u>Watts</u>, 298 F.3d at 1082 (where the Ninth Circuit, considering CAL. CIV. PROC. § 704.950,

MEMORANDUM DECISION - 7

indicated that surplus equity may be calculated at a date later than the abstract recording date, such as at the time the debtor files a bankruptcy petition); see also, Barnes, 326 B.R. at 841-42 (where in determining the validity of a judgment lien under the state homestead exemption statute, the court looked at available equity as of the petition date). The Debtors' schedules indicate that the fair market value of the Property at the time of the bankruptcy filing was $260,000. At trial, the Debtors offered the testimony of Travis Anderson in support of this value. His valuation was based on an appraisal of the Property done on a refinance one year prior to bankruptcy, as well as on an appraisal completed in the same year as his bankruptcy filing incident to an attempted refinance. Importantly, although Star Rentals argued at trial that it disputes the $260,000 value, it did not offer any evidence as to the Property value. Thus, the only evidence before the Court is that the Property had a value of $260,000 at the time of the Debtors' bankruptcy filing. The Debtors' schedules further provide that the mortgage balance at filing was $238,072.65. This too is undisputed.

Prior to the bankruptcy filing, the Debtors were entitled to a $40,000 homestead under Washington law, pursuant to RCW 6.13.030. Based on a mortgage balance of $238,072.65, at the time of the bankruptcy filing, there was no "value of the homestead property in excess of the homestead exemption" to which the Judgment Lien could attach. RCW 6.13.090. Under Washington law, homestead and exemption laws are favored and are to be liberally construed. Sweet v. O'Leary, 88 Wn. App. 199, 204, 944 P.2d 414, 417 (1997). Applying this liberal construction, looking at the more specific analysis of Deal and Sweet, and adopting an approach consistent with the analysis in Dodge and Barnes, Star Rentals' Judgment Lien had not attached at the time of the Debtors' bankruptcy filing. Accordingly, Star Rentals' debt was unsecured and subsequently discharged as a personal liability in January, 2002, pursuant to

MEMORANDUM DECISION - 8

11 U.S.C. § 524(a)(1). Consistent with Professor Epstein's analysis in the context of floating liens, once the personal liability was discharged, there was no basis for the Judgment Lien to *float* through bankruptcy. At trial, Star Rentals conceded that if it did not have a valid lien on the Property post-petition, then it committed a violation under 11 U.S.C. § 524(a)(2). Thus, Star Rentals' post-discharge assertion of the Judgment Lien in the Property constituted enforcement of a discharged debt in violation of the discharge order.

Notwithstanding the above analysis, even if Star Rentals had prevailed in its defense of the discharge violation action, a debtor may seek relief under 11 U.S.C. § 522(f) post-discharge even though the debtor no longer has an interest in the residence when the lien avoidance motion is filed. In re Chiu, 304 F.3d 905, 908 (9th Cir. 2002); see also, In re Wilding, 475 F.3d 428, 432-33 (1st Cir. 2007) (where debtors were allowed to seek avoidance of a judicial lien even though the lien was satisfied before the debtors moved for such relief).

The Debtors are entitled to the amount paid to Star Rentals upon its assertion of the Judgment Lien, $26,805.54, plus prejudgment interest at the federal interest rate.

DATED: October 31, 2007

_____
Paul B. Snyder
U.S. Bankruptcy Judge